# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

ELAINE ROSALY VALENTIN,
    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,
    Defendant.

No. 3:17-cv-00781 (SRU)

## RULING ON PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S MOTION FOR AN ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

In the instant Social Security appeal, Elaine Rosaly Valentin moves to reverse the decision by the Social Security Administration ("SSA") denying her disability insurance benefits. The Commissioner of Social Security moves to affirm the decision. Because the decision by the Administrative Law Judge ("ALJ") was not supported by substantial evidence, I deny the Commissioner's motion and grant Valentin's.

**I.    Standard of Review**

The SSA follows a five-step process to evaluate disability claims. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam). First, the Commissioner determines whether the claimant currently engages in "substantial gainful activity." *Greek v. Colvin*, 802 F.3d 370, 373 n.2 (2d Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1520(b)). Second, if the claimant is not working, the Commissioner determines whether the claimant has a "'severe' impairment," i.e., an impairment that limits his or her ability to do work-related activities (physical or mental). *Id.* (citing 20 C.F.R. §§ 404.1520(c), 404.1521). Third, if the claimant does have a severe impairment, the Commissioner determines whether the impairment is considered "per se disabling" under SSA regulations. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). If

the impairment is not per se disabling, then, before proceeding to step four, the Commissioner determines the claimant's "residual functional capacity" based on "all the relevant medical and other evidence of record." *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4), (e), 404.1545(a)). "Residual functional capacity" is defined as "what the claimant can still do despite the limitations imposed by his [or her] impairment." *Id.* Fourth, the Commissioner decides whether the claimant's residual functional capacity allows him or her to return to "past relevant work." *Id.* (citing 20 C.F.R. §§ 404.1520(e), (f), 404.1560(b)). Fifth, if the claimant cannot perform past relevant work, the Commissioner determines, "based on the claimant's residual functional capacity," whether the claimant can do "other work existing in significant numbers in the national economy." *Id.* (20 C.F.R. §§ 404.1520(g), 404.1560(b)). The process is "sequential," meaning that a petitioner will be judged disabled only if he or she satisfies all five criteria. *See id.*

The claimant bears the ultimate burden to prove that he or she was disabled "throughout the period for which benefits are sought," as well as the burden of proof in the first four steps of the inquiry. *Id.* at 374 (citing 20 C.F.R. § 404.1512(a)); *Selian*, 708 F.3d at 418. If the claimant passes the first four steps, however, there is a "limited burden shift" to the Commissioner at step five. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). At step five, the Commissioner need only show that "there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." *Id.*

In reviewing a decision by the Commissioner, I conduct a "plenary review" of the administrative record but do not decide *de novo* whether a claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam); *see Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam) ("[T]he reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting

inferences can be drawn."). I may reverse the Commissioner's decision "only if it is based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole." *Greek*, 802 F.3d at 374–75. The "substantial evidence" standard is "very deferential," but it requires "more than a mere scintilla." *Brault*, 683 F.3d at 447–48. Rather, substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greek*, 802 F.3d at 375. Unless the Commissioner relied on an incorrect interpretation of the law, "[i]f there is substantial evidence to support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

## II. Facts

Elaine Rosaly Valentin applied for Social Security disability insurance benefits on April 11, 2013, alleging a period of disability beginning January 31, 2013. Joint Stipulation of Facts, Doc. No. 16, at 2. Valentin identified her disability as including the following illnesses and conditions: "Ptsd, Major Depression, Anxiety, Bipolar, Paranoya [sic]." *See* Disability Determination Explanation, R. at 113.

The SSA denied Valentin's claim on June 12, 2015, finding that Valentin's "ability to perform work at all exertional levels ha[d] been compromised by nonexertional limitations" but that "these limitations ha[d] little or no effect on the occupational base of unskilled work at all exertional levels." *Id.* at 37. In the agency's view, Valentin was not disabled. *Id.*

Valentin sought reconsideration, alleging that the ALJ "improperly evaluated the opinion evidence." Representative Brief, dated 09/17/2015, from Gary C. Pernice, R. at 361. The SSA denied Valentin's request for review. AC Denial (ACDENY), dated 01/13/2017, at 1.

Valentin requested a hearing before an ALJ, which was held on April 22, 2015. Tr. of ALJ Hr'g, R. at 45. At the hearing, ALJ Deirdre R. Horton questioned Valentin about her family,

3

as well as her weight gain and medications and their side effects. *Id.* at 53–55. The ALJ also questioned Valentin about her job history, particularly asking her how much weight she lifted at various prior jobs and what kinds of tasks her positions had entailed. *Id.* at 55–60. ALJ Horton also questioned Valentin about her mental health history, suicide attempt, and treatment. *Id.* at 63–69.

On June 12, 2015, the ALJ issued an opinion in which she found that Valentin "ha[d] not been under a disability, as defined in the Social Security Act, from January 31, 2013, through the date of this decision." ALJ Decision, R. at 37. At the first step, the ALJ found that Valentin "ha[d] not engaged in substantial gainful activity since January 31, 2013, the alleged onset date." *Id.* at 28. At the second step, the ALJ found that Valentin's "major depressive disorder; post-traumatic stress disorder (PTSD); generalized anxiety disorder; and panic disorder with agoraphobia" were "severe" impairments that "more than minimally affected [Valentin's] ability to engage in work-related activities."[1] *Id.* At the third step, the ALJ determined that Valentin's impairments were not per se disabling because Valentin "d[id] not have an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments." *Id.* at 29.

The ALJ then assessed Valentin's residual functional capacity, and found that she could "perform a full range of work at all exertional levels" with certain nonexertional limitations. Those nonexertional limitations were that Valentin (1) "was able to engage in simple, routine

---

[1] The ALJ ruled that Valentin's headaches and obesity were not severe impairments. ALJ Decision, R. at 28–29. Regarding headaches, the ALJ ruled that Valentin "sought no significant treatment or medication for headaches" and that there was "absolutely no objective medical evidence demonstrating that [the headaches had] caused more than minimal limitations for any 12-month period since [Valentin's] alleged onset date." *Id.* at 28. Regarding obesity, the ALJ held that while Valentin was "obese, there [was] no indication that her obesity ha[d] caused more than minimal limitations" and was not "severe". *Id* at 29.

4

tasks and occasional complex tasks" and (2) could "relate appropriately to others, but should not have interaction with the general public." *Id.* at 30.

Although Valentin's residual functional capacity precluded performance of "any past relevant work," ALJ Horton concluded that "there are jobs that exist in significant numbers in the national economy that [Valentin] c[ould] perform." *Id.* at 36–37. Although the ALJ found that Valentin's "ability to perform work at all exertional levels has been compromised by nonexertional limitations" she ruled that "these limitations ha[d] little or no effect on the occupational base of unskilled work at all exertional levels." *Id.* at 37. "A finding of 'not disabled [was] therefore appropriate," and the ALJ denied Valentin's request for disability benefits. *Id.*

Valentin requested a review of the ALJ's decision by the SSA's Appeals Council on July 27, 2015. Request for Review of Hearing Decision/Order, R. at 21. Holding that there was "no reason . . . to review the [ALJ]'s decision," the Appeals Counsel "denied [Valentin's] request for review" on January 13, 2017. Notice of Appeals Council Action, R. at 1. On May 11, 2017, Valentin filed a complaint with this court urging me to reverse the Commissioner's decision. Compl., Doc. No. 1.

## III. Discussion

On review, Valentin asserts the ALJ made several improper findings. Mem. Supp. Pl's Motion for Judgment on the Pleadings, Doc. No. 15, at 1. Specifically, Valentin contends that the ALJ "failed to properly weigh the medical opinion evidence" and "failed to properly determine [Valentin's] residual functional capacity", *id.* at 1; "failed to properly evaluate [Valentin's] credibility"; *id.* at 8; and "erred by relying on the medical-vocational guidelines", *id.* at 10.

5

The Commissioner responds that "substantial evidence supports the decision" of the ALJ and argues that the Commissioner's final decision should be affirmed. Mot. Affirm, Doc. No. 17-1, at 1. For the reasons that follow, the case is remanded for further proceedings.[2]

A. Did the ALJ fail to properly evaluate the medical opinion evidence and fail to properly determine Valentin's residual functional capacity?

Valentin challenges the ALJ's treatment of the medical opinion evidence on two fronts. First, she argues that the ALJ incorrectly gave only "minimal weight" to the opinion of Valentin's treating psychiatrist, Dr. Cottrol, and "no weight" to the opinions of Valentin's treating psychologist, Dr. Feste, and treating therapist, M.A. Cunard. Mem. Supp. Motion for Judgment on the Pleadings, Doc. No. 15, at 3. Second, she objects to the ALJ's decision to give "considerable weight" to the opinion of the administration's own examining psychologist Dr. Martinez-Muraoka, and "very great weight" to the opinions of non-examining state agency psychologists. *Id.* at 3. The Commissioner replies that the ALJ accorded proper weight to the medical opinion evidence. Mem. Supp. Mot. Affirm, Doc. No. 17-1, at 4–5.

Regarding the residual functional capacity determination, Valentin argues that the ALJ's determination was not supported by substantial evidence because the finding was "[i]n contradiction to [the ALJ's] purported reliance on the government's own expert". Mem. Supp. Mot. Reverse, Doc. No. 15, at 6. In particular, Valentin asserts that the ALJ's finding that Valentin did not have "any limitations making appropriate decisions, dealing with stress, or maintaining a regular schedule" is "reversible error" because the ALJ did not explain why she did not adopt the opinion of the Social Security Administration's examining psychologist. *Id.*

---

[2] Because the case is remanded at step three, I need not decide whether the ALJ 1) failed to properly evaluate Valentin's credibility and 2) made an improper determination at step five, because these determinations will be reconsidered based on remand at step three.

6

The Commissioner responds that the ALJ's residual functional capacity findings are adequately "supported by substantial evidence." Mem. Supp. Mot. Affirm, Doc. No. 17-1, at 4. For the reasons set forth below regarding the weight assigned to various medical experts, I agree with Valentin, and therefore remand the case regarding the ALJ's residual functional capacity findings.

1. *Evaluation of Medical Opinion Evidence*

"The treating physician rule provides that an ALJ should defer to 'to the views of the physician who has engaged in the primary treatment of the claimant,'" but need only assign those opinions "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record."[3] *Cichocki v. Astrue*, 534 F. App'x 71, 74 (2d Cir. 2013) (summary order) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); 20 C.F.R. § 404.1527(c)(2)). When the ALJ "do[es] not give the treating source's opinion controlling weight," she must "apply the factors listed" in SSA regulations, 20 C.F.R. § 404.1527(c)(2), including "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian*, 708 F.3d at 418. After considering those factors, the ALJ must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion," *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004), and provide "good reasons" for the weight assigned, *Burgess*, 537 F.3d at 129.

---

[3] Originally a rule devised by the federal courts, the treating physician rule is now codified by SSA regulations, but "the regulations accord less deference to unsupported treating physician's opinions than d[id] [the Second Circuit's] decisions." *See Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).

The Second Circuit has held that "not all expert opinions rise to the level of evidence that is sufficiently substantial to undermine the opinion of the treating physician." *Id.* at 128. For example, an expert's opinion is "not substantial, *i.e.,* not reasonably capable of supporting the conclusion that the claimant could work where the expert addressed only deficits of which the claimant was not complaining, or where the expert was a consulting physician who did not examine the claimant and relied entirely on an evaluation by a non-physician reporting inconsistent results." *Id.* (internal citations and quotations omitted).

The Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination," and has advised that, ordinarily, "a consulting physician's opinions or reports should be given little weight." *Selian*, 708 F.3d at 419; *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990). The question here is whether the ALJ sufficiently provided "good reasons" for weighing the opinions of the consultative physicians more heavily than the opinions of Valentin's treating physicians. *See Burgess*, 537 F.3d at 129.

The ALJ stated that she afforded "very great weight" to two state agency consultants whose opinions were "much more consistent with [Valentin's] overall treatment history" than the opinions of the treating physician and treating psychiatrist and other mental healthcare providers. ALJ Decision, R. at 35. The ALJ "gave greater weight" to the opinions of the state non-examining physicians because she stated that the totality of the medical evidence of record supported the conclusion that Valentin did not have any severe physical impairment and that "[t]his conclusion [was] supported by the objective medical evidence of record." *Id.* at 36. The ALJ afforded "considerable weight" to the opinion of consultative examiner Dr. Martinez-Muraoka because it was "consistent with the opinions of" the state agency consultants. *Id.*

8

State agency consultant Warren Lieb, Ph.D., opined that Valentin "was able to remember and understand simple instructions, [could] perform routine, repetitive tasks, [could] maintain attention necessary to complete simple tasks in a low demand environment, and [could] function in a solitary work setting requiring minimal collaboration with others and not requiring regular contact with the public." *Id.* at 35 (referencing Exhibit 1A, Disability Determination Explanation, received 10/08/13, R. at 122). The ALJ also pointed to an examination by a state agency consultant, Kenneth Bangs, Ph.D., and an opinion by a consultative examiner Dr. Martinez-Muraoka, who confirmed Lieb's opinion. *Id.* at 35–36 (referencing Exhibit 5A, Disability Determination, received 01/08/14, R. at 141–54 (referencing Exhibit 10F, CE: Adult Psychiatric Evaluation Report by Sandy Martinez-Muracka, Ph.D. (IMA), R. at 500).

Valentin's doctors expressed a more severe evaluation of her impairments. Valentin's treating psychologist, Cheryl Cottrel, M.D., opined that Valentin had "marked limitations in multiple areas, including the ability to remember locations and work-like procedures, the ability to understand, remember, and carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to sustain ordinary routine without supervision, the ability to work in coordination with or in close proximity to others without being distracted, the ability to make simple work-related decisions and the ability to complete a normal work day or work week." *Id.* at 35 (referencing 7F, Psychiatric/Psychological Impairment Questionnaire by Dr. Cheryl Cottrel, R. at 472–75).

Valentin's treating social worker, Yvonne Booy, opined that Valentin "had a serious problem with using appropriate coping skills, handling frustration appropriately, focusing long enough to finish assigned simple activities, and performing basic work activities at a reasonable

9

pace." *Id.* (referencing 4F, Mental Impairment Questionnaire, Discharge Plan by Yvonne Booy, R. at 430).

The ALJ determined that the opinions of Cottrell and Booy were "not consistent with the objective medical evidence of record" and were "inconsistent with other opinion evidence of record that [wa]s more consistent with the record as a whole." ALJ Decision, R. at 35. She assigned "no weight" to the April 2014 opinions of Valentin's treating mental health providers, Laura Feste, Ph.D. and Barbara Cunard, M.A., because she stated that they were "not consistent with the actual objective medical evidence of record, which ha[d] routinely demonstrated that [Valentin] ha[d] been alert and oriented…pleasant and cooperative, and…had no significant deficits in memory, attention, concentration, thought process, thought content, or cognition." *Id.*

The ALJ also noted that Feste's and Cunard's opinions in April 2014 were "drastically different from their opinions just four months earlier[,]" when they had opined that Valentin "had no problems or only slight problems in almost every area of functioning and that she had only a serious or very serious problem in one area, which was getting along with others without distracting them." *Id.*

I find that the ALJ did not provide sufficiently "good reasons" for weighing the opinions of the consultative physicians more heavily than the opinions of Valentin's treating physicians. *See Burgess*, 537 F.3d at 129. Although ALJ Horton stated that the totality of the medical evidence of record supported the conclusion that Valentin did not have any severe physical impairment, writing that "[t]his conclusion [was] supported by the objective medical evidence of record," she did not cite to any specific medical authority to support that finding. *See* ALJ Decision, R. at 36.

For the same reasons, I conclude that—after she decided not to give the mental health providers' opinions controlling weight—ALJ Horton did not properly evaluate the persuasiveness of the opinions under the factors listed in 20 C.F.R. § 404.1527(c)(2)–(6). Here, the ALJ was not sufficiently specific when writing that the mental health providers' opinions were "completely inconsistent with [Valentin's] treatment history" and "not consistent with the actual objective medical evidence of record" because she did not cite to any specific medical records to support that finding. *See* ALJ Decision, R. at 35; *Camille*, 562 F. App'x at 28. The ALJ instead merely pointed to the opinions of non-examining state agency psychologists.

Hence, I remand the ALJ's decision for further consideration of the treating physicians' opinions.

2. *Residual Functional Capacity Determination*

Between steps three and four of the SSA's analysis for disability claims, the ALJ must "determine[], based on all the relevant medical and other evidence of record, the claimant's 'residual functional capacity,' which is what the claimant can still do despite the limitations imposed by his impairment." *Greek*, 802 F.3d at 373 n.2 (citing 20 C.F.R. § 404.1520(b)). The ALJ's determination need not "perfectly correspond with" any medical source opinion. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). Rather, the ALJ is "entitled to weigh all of the evidence available to make a[] . . . finding that [is] consistent with the record as a whole." *Id.* In assessing a claimant's residual functional capacity, SSA regulations require the ALJ to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)," as well as "discuss[ing] the [claimant]'s ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and

describ[ing] the maximum amount of each work-related activity the [claimant] can perform based on the evidence available in the case record." Social Security Ruling 96-8p, 1996 WL 374184, at *7. Finally, the ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*

In making a residual functional capacity determination in the present case, ALJ Horton noted that Valentin's "treatment history [wa]s not consistent with her extreme allegations" because she "sought no significant, prolonged treatment for her allegedly disabling back and joint pain" and because her mental health treatment was "sporadic" and "significantly improved with more prolonged treatment." ALJ Decision, R. at 34.

ALJ Horton limited Valentin to engaging in "simple, routine tasks and occasional complex tasks" and held that Valentin can "relate appropriately to others, but should not have interaction with the general public." ALJ Decision, R. at 30.

Once again, in crafting those limitations, the ALJ did not rely on substantial evidence. Although she pointed to "mental health treatment notes," *id.* at 36, and "opinions" by consultative mental health providers and physicians, she did not provide any specific medical records to support her assertions. *Id.* at 30–36.

Thus, the case is remanded for further consideration of Valentin's residual functional capacity.

IV. **Conclusion**

For the reasons stated, I grant Valentin's Motion for Judgment on the Pleadings, Doc. No. 14, and deny the Commissioner's Motion to Affirm, Doc. No. 17. The Clerk is directed to remand the case to the Social Security Administration.

So ordered at Bridgeport, Connecticut, this 17th day of September 2018.

                                                         /s/ STEFAN R. UNDERHILL
                                                         Stefan R. Underhill
                                                         United States District Judge